Gottlieb, Appellant, *v.* Scranton Railway Company.

8

Argued March 4, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Baldrige and Graff, JJ.

*P. E. Kilcullen,* for appellant.

*Walter L. Hill,* of *Knapp, O'Malley, Hill & Harris,* for appellee.

Opinion by Linn, J., April 18, 1930:

Plaintiff sued to recover for damage to his automobile. The argument so earnestly presented on his behalf is not applicable to the record rightly understood. It is contended that, notwithstanding inconsistencies said to exist in his account of the accident, his evidence, taken with the evidence of other witnesses called by him, required that the case be sent to the jury to ascertain whether there was contributory negligence. All the evidence, that of the plaintiff, his wife, and the two passengers in the street car, clearly shows that he did not observe the measure of care required. This rule was recently stated as follows: "It is an inflexible rule that travelers must look at the edge of the street car track for approaching cars thereon ...... [citing cases] ...... The object of this rule is to enable the traveler to ascertain the position and movement of the electric cars that he may avoid entering upon the track in case of danger. The look is of no avail when he who looks must enter upon the track regardless of what he sees. Hence, as a companion to the rule above stated, is the additional rule that at the moment of such look the traveler must have his vehicle under control so he can stop before getting in the path of an approaching electric car": Smith v. Lehigh Valley Transit Company, 296 Pa. 212, 214. While that rule was stated and applied in a case where plaintiff intended to cross the tracks, the same measure of care must be observed—indeed, there is greater necessity for its observance—where the plaintiff, as in the case at bar, turns the corner of an intersecting street on which a car may approach and while doing so, drives with part of his automobile within the car tracks.

Plaintiff's course was northward on Washington Avenue to Marion Street, then eastward on Marion Street; the course of defendant's street car, which struck plaintiff's automobile, was westward on Marion

Street to Washington Avenue, and then, southward on Washington Avenue. The collision occurred on Marion Street at or just east of its intersection with Washington Avenue. Each of these streets has a car track in the center; the distance from the curb to the nearest rail on Washington Avenue is 17½ feet; on Marion Street the nearest rail is 16½ feet from the curb. The car tracks curve from Washington Avenue to Marion Street on a line that brings the nearest rail 10 feet from the curb at the southeast corner of the intersection. As plaintiff made the turn from Washington Avenue into Marion Street the left wheels of his automobile were between the rails.

Plaintiff testified that he saw the street car when he "took the corner;" that "when I come as far I seen the street car coming on top of me I held my hand out and told him to stop, the motorman, and he failed and I put my car in reverse to come back to get out of the way of being struck but he failed to do that and come right on top of me and backed, pushed me about 20 or 30 feet back on Marion Street . . . . . . ;" it is possible that by Marion Street in that answer, he meant Washington Avenue, but immaterial in our decision of the legal question. In cross-examination, he said that when he first saw the street car he was within "4 or 5 feet" away from it and that he was "probably 15 or 20 feet from the corner going up Marion Street."

His wife testified that "he started to turn on Marion Street and he noticed the street car." She fixes the point of the collision "just at the corner, just about at Marion Street, just about to turn Marion Street." A witness, who had been seated in the street car, said "we had just left the double switch on the single track [in Marion Street] when I saw an automobile coming on the corner." This switch point on Marion Street was about 60 feet east of Washington Avenue. The witness continues that the automobile had stopped and began to back "down to Washington Avenue" and

that the street car kept on and collided with the automobile as the street car "was turning around the corner." Asked how many feet the automobile had driven "in reverse," he said. "about 8 to 10 feet." In cross-examination this witness said that from the seat he occupied in the street car he saw the automobile in Washington Avenue as it turned into Marion Street. Another witness, called by plaintiff, who was also a passenger in the street car, testified that as the car "came off the switch on Marion Street on the single track" he saw the automobile turn from Washington Avenue into Marion Street; that he saw the automobile stop and move backward and that the collision occurred 8 or 9 feet on Washington Avenue.

It is obvious from all the evidence produced on behalf of plaintiff that when he reached the intersection, and before he began to turn into Marion Street, he should have seen the approaching street car which was then approaching from the switch in Marion Street, a distance of at least 60 feet east of the east curb of Washington Avenue and should have avoided the collision. Both witnesses called by him, who were passengers in the street car, saw his automobile at that time, so that if he had been looking, as he should have been, he could have seen the street car and avoided driving his automobile into the position of danger in which the accident was inevitable. His own evidence, that he did not see the street car sooner than he describes, is conclusive proof, in the circumstances appearing, of such want of care as bars recovery: Smith v. Lehigh Valley Transit Company, supra; Fortune v. Dolfinger, 97 Pa. Superior Ct. 545; Brayman v. DeWolf, 97 Pa. Superior Ct. 225.

The court was right in setting aside the plaintiff's verdict for $172.91 and in entering judgment for the defendant n. o. v.

Judgment affirmed.